IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GAREY C. GOMEZ,**

       **Plaintiff,**

  **v.**                                         Civil Action No. 3:22cv746

**MIDLO FLOORS LLC, d/b/a MIDLO
FLOORS & BEYOND,**

      **and**

**CITYLOCAL101, LLC,**

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Garey C. Gomez's Motion for Entry of Final Judgment by Default Against Defendants Midlo Floors LLC DBA Midlo Floors & Beyond and CityLocal101, LLC Memorandum of Law (the "Motion"). (ECF No. 18.)   For the reasons that follow, the Court will grant in part the Motion.

### I.  Factual and Procedural Background

#### A.  Factual Background[1]

Plaintiff Garey C. Gomez is an award-winning Atlanta-based professional photographer. (ECF No. 1, at 1.)  He "works with architects, interior designers, construction firms and

---

[1] All of the following facts are drawn from Mr. Gomez's Complaint, Motion, and all attached documents submitted with those filings, as Defendants have not responded to the Complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (requiring a court considering a default motion to determine whether a plaintiff's well-pleaded allegations support the relief sought).

homebuilders" to compile "portfolio imagery to showcase their work." (ECF No. 1, at 1.)  Mr. Gomez specializes in "aerial, architecture, commercial, construction, education architectural, healthcare architectural, interiors, real estate, residential[,] and twilight photography." (ECF No. 1, at 2.)  His photographs have been featured in multiple publications. (ECF No. 1, at 1–2.)

### 1.    The Work at Issue

In 2020, Mr. Gomez created a photograph entitled "20200625.CopperSky599Linwood-101-2" (the "Work"). (ECF No. 1, at 3.)  The Work depicts the exterior of a home. (ECF No. 1, at 3.)  On July 1, 2020, pursuant to 17 U.S.C. § 411(a),[2] Mr. Gomez registered the Work with the Register of Copyrights. (ECF No. 1, at 4; ECF No. 1-1, at 2, 7, 8.)  The United States Copyright Office then issued Mr. Gomez a Certificate of Registration that included the Work and provided Mr. Gomez the registration number "VA 2-210-956." (ECF No. 1-1, at 2, 7.)

### 2.    Defendants' Use of the Work

Gomez names two defendants in this case.  Defendant Midlo Floors LLC d/b/a Midlo Floors & Beyond ("Midlo") is a Richmond-based interior design and home remodeling company. (ECF No. 1, at 2–3; ECF No. 1-2, at 3–4.)  Midlo is a Virginia Limited Liability Company with its principal place of business and registered agent located in Richmond, Virginia. (ECF No. 1, at 3.)  Defendant CityLocal101, LLC ("CityLocal101") is a "local business directory." (ECF No. 1, at 2.)  It is also a Virginia Limited Liability Company. (ECF No. 1, at

---

[2] 17 U.S.C. § 411, "Registration and civil infringement actions", states, in relevant part:

(a) Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

17 U.S.C. § 411(a).

3.)  CityLocal101 has a principal place of business and registered agent in Manassas Park,

Virginia.  (ECF No. 1, at 3.)  CityLocal101 owns and operates the website

"https://www.citylocal101.com." (the "Website").  (ECF No. 1, at 2.)

On or about December 10, 2021, Mr. Gomez discovered the Work on the Website in an

advertisement for Midlo's business (the "Advertisement").  (ECF No. 1, at 4.)  The

Advertisement features the Work with added text referencing Midlo's bathroom remodeling

services, residential general construction services, and exterior home remodeling.  (ECF No. 1-2,

at 2–4.)  The Advertisement also states:

**Exterior Home Remodeling**

Hire our reliable home remodeling contractors if you want to enhance the appeal
of your exterior.  We provide exceptional exterior remodeling services to improve
the appearance of your exterior.  Our professional home remodeling contractors
are skilled, trained, and have years of experience in handling numerous home
remodeling projects in Midlothian VA.  We understand the structure of your
home exterior and remodel it with the best possible solutions.  Contact us today
and let us make your home more appealing.

(ECF No. 1-2, at 2.)  Mr. Gomez has never authorized Midlo or CityLocal101 (collectively, the

"Defendants") to use the Work for any purpose.  (ECF No. 1, at 4.)  Mr. Gomez alleges that

Defendants "copied [the] Work from the [I]nternet." (ECF No. 1, at 2.)

**B.**     **Procedural Background**

**1.**     **Pre-Filing Communication**

Mr. Gomez, through counsel SRIPLAW, P.A. ("SRIPLAW"), notified Midlo and

CityLocal101 in writing of Gomez's copyright demanding that they cease the infringing use of

the Work and that they pay a license fee for its unauthorized use.  Counsel for Mr. Gomez sent a

demand letter to Midlo on January 12, 2022, and sent a follow-up demand letter on January 31,

2022.  (ECF Nos. 18-1, Gomez Decl. ¶ 13; 18-2, Lekht Dec. Ex. 4, at 1–2.)  Counsel for Mr.

Gomez sent a demand letter to CityLocal101 on March 31, 2022.[3]  (ECF No. 18-2, Lekht Decl.

Ex. 4, at 3–4.)  Neither entity responded to these notices.  (ECF No. 18-1, Gomez Decl. ¶ 15.)

### 2.   Filing and Service of the Complaint

On November 30, 2022, Mr. Gomez filed a two-count Complaint against Defendants

seeking damages and injunctive relief based on Defendants' unauthorized use of the Work.

(ECF No. 1, at 1.)  Count I of the Complaint claims direct infringement against the Defendants.

(ECF No. 1, at 5.)  Count II of the Complaint charges indirect infringement against the

Defendants.  (ECF No. 1, at 6.)

On December 7, 2022, Mr. Gomez served a copy of the Summons and Complaint on

Midlo.  (ECF No. 6, at 2.)  He returned Midlo's executed summons to the Court on December

22, 2022.  (ECF No. 6.)  After one unsuccessful attempt at service, Mr. Gomez served a copy of

the Complaint on CityLocal101 on February 28, 2022.  (ECF No. 10-1, at 1.)  He returned

CityLocal101's executed summons to the Court on March 13, 2023.  (ECF No. 10.)

Accordingly, executed summons were filed by March 13, 2023. (ECF Nos. 6, 10.)

Neither Defendant has made an appearance or filed a responsive pleading, and their time

to do so has expired.  *See* Federal Rule of Civil Procedure 12(a).[4]

---

[3] Mr. Gomez avers that his "local" counsel notified CityLocal101 of his allegations of copyright infringement on March 17, 2022.  (ECF No. 18-1, Gomez Decl. ¶ 14.)  As noted above, lead counsel shows a demand letter date of March 31, 2022.  (ECF No. 18-2, Lekht Decl. Ex. 4, at 3–4.)  Local counsel, Schleifman Law, PLC, does not report any billing before November 30, 2022.  (ECF No. 18-2, Lekht Decl. Ex. 5.)  The discrepancy in dates is immaterial; the record shows that a demand letter was sent to CityLocal101 prior to a complaint being filed in this Court.

[4] Federal Rule of Civil Procedure 12(a) provides in relevant part:

(1) *In General.*  Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

On April 24, 2023, Mr. Gomez requested that the Clerk of Court enter default as to both Defendants.  (ECF No. 12, at 1.)  On April 25, 2023, the Clerk entered default against both Defendants.  (ECF No. 14.)  On June 30, 2023, after receiving an extension of time from the Court to do so, (ECF No. 17), Mr. Gomez filed a Motion for Entry of Final Judgment by Default Against Defendants Midlo Floors LLC DBA Midlo Floors & Beyond and CityLocal101, LLC Memorandum of Law (the "Motion").  (ECF No. 18.)

## II.  Standard of Review

Federal Rule of Civil Procedure 55 governs default judgment.  Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  The party seeking entry of default judgment must then "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

A defendant in default "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  The clerk's entry of default does not itself warrant the Court's entry of default judgment.  *See id.*

---

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

Fed. R. Civ. P. 12(a)(1).

But the "defendant is not held . . . to admit conclusions of law.  In short, a default is not treated as treated as an absolute confession" of legal responsibility.  *Id.*  Normally, before entry of default judgment, the Court must determine whether the allegations of the complaint support the relief sought.  *See id.*  This is so because "[d]efault is a harsh measure because it ignores the merits", *Bogopa Serv. Corp. v. Shulga*, No. 3:08cv365, 2009 WL 1628881 (MR), at *3 (W.D.N.C. June 10, 2009), and "the Fourth Circuit has a 'strong policy that cases be decided on the merits[.]'" *State Employees' Credit Union v. Nat'l Auto Leasing, Inc.*, No. 2:06cv663 (JBF), 2007 WL 1459301, at *1 (E.D. Va. May 14, 2007) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

Prior to entering a default judgment, the Court must ensure that:  (1) it possesses personal jurisdiction over the defaulting party; (2) it possesses subject-matter jurisdiction over each of the claims; (3) the action is in the proper venue; and, (4) the defaulting party received proper service of process.  *See Am. Auto. Assoc. v. AAA Auto Glass, LLC*, No. 1:14cv1072 (CMH/TCB), 2015 WL 3545927, at *1–2 (E.D. Va. June 3, 2015).  The Court must also "determine whether the well-pleaded allegations in [Plaintiff's] complaint support the relief sought in this action." *Ryan*, 253 F.3d at 780.

A federal district court has subject matter jurisdiction over claims that arise under federal law, *see* 28 U.S.C. § 1331.[5]  A court possess personal jurisdiction over a defendant who has sufficient minimum contacts with the forum state, who is subject to the personal jurisdiction of the courts of the forum state, and who has received effective service of process.  *See Int'l Shoe*

---

[5] Section 1331 states:  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331.

*Co. v. Washington*, 326 U.S. 310, 316–17 (1945); Fed. R. Civ. P. 4(k)(1)(A).[6] A business operating in Virginia has sufficient minimum contacts with this forum and is subject to the jurisdiction of the courts of Virginia. *See* Va. Code. § 8.01-328.1; Va. Code § 8.01-328.

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).[7] Furthermore, venue is proper in copyright cases "in the district in which the defendant . . . resides or may be found." 28 U.S.C. § 1400(a);[8] *see also Spencer v. Yellowcabservices.com*, No. 1:20cv368 (TCB), 2020 WL 13200117, at *2 (E.D. Va. Nov. 19, 2020) (venue was proper pursuant to 28

---

[6] Rule 4(k) states, in pertinent part:

(k) TERRITORIAL LIMITS OF EFFECTIVE SERVICE.

(1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

(A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located.

Fed. R. Civ. P. 4(k)(1)(A).

[7] 28 U.S.C. § 1391(b)(1) provides:

(b) VENUE IN GENERAL.—A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]

28 U.S.C. §1391(b)(1).

[8] 28 U.S.C. § 1400(a) provides:

(a) Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

28 U.S.C. § 1400(a).

U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) where defendant, a Virginia LLC, "reside[d]" in the Eastern District of Virginia").

Pursuant to Federal Rule of Civil Procedure 4(e)(2)(C), an individual within a judicial district of the United States may be served by "delivering a copy of [the summons and the complaint] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). Rule 4(h)(1)(B) provides that service upon a business entity may be effected by serving "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). *See also* Va. Code § 13.1-1018;[9] Va. Code § 8.01-329.[10]

### III.  Analysis

Mr. Gomez asserts that Defendants infringed his copyright in violation of 17 U.S.C. § 501. (ECF No. 1, at 7.) The well-pleaded allegations in Mr. Gomez's Complaint, deemed

---

[9] Va. Code § 13.1-1018 provides that for corporations, partnerships, or associations, service may be effected by serving its registered agent. Va. Code § 13.1-1018.

[10] Va. Code § 8.01-329 provides in relevant part:

A.  When the exercise of personal jurisdiction is authorized by this chapter . . . process or notice may be served on any agent of such person in the county or city in the Commonwealth in which that agent resides or on the Secretary of the Commonwealth of Virginia, hereinafter referred to in this section as the "Secretary," who, for this purpose, shall be deemed to be the statutory agent of such person.

B.  When service is to be made on the Secretary, the party or his agent or attorney seeking service shall file an affidavit with the court, stating either (i) that the person to be served is a nonresident or (ii) that, after exercising due diligence, the party seeking service has been unable to locate the person to be served. In either case, such affidavit shall set forth the last known address of the person to be served.

Va. Code § 8.01-329.

admitted as a result of default by Midlo and CityLocal101, satisfy the requirements for copyright infringement. Therefore, the Court will order default judgment against Defendants.

For the reasons discussed below, the Court will order that Defendants pay to Mr. Gomez $8,250.00 in statutory damages, $855.00 in costs ($453.00 from SRIPLAW and $402.00 from Schleifman Law, PLC ("Schleifman")), and $12,982.50 in attorney's fees ($12,422.50 from SRIPLAW and $560.00 from Schleifman). The Court will also order Defendants to pay Mr. Gomez prejudgment interest at an annual rate of six percent from December 10, 2021 until the date of this Memorandum Opinion and related Final Order, as well as post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961 and accruing from the date of this Memorandum Opinion and related Final Order.

### A.   The Court Has Jurisdictional and Statutory Authority to Render Default Judgment Against the Defendants

The requirements for entering default judgment against Defendants have been satisfied. First, the Court possesses subject matter jurisdiction is proper because Mr. Gomez's claims arise under the Copyright Act, 17 U.S.C. § 501. *See* 28 U.S.C. § 1331. Second, the Court has personal jurisdiction over both Defendants, which are Virginia Limited Liability Companies that each have a principal place of business in Virginia. *See* Fed. R. Civ. P. 4(k)(1)(A); Va. Code § 8.01-328.1; Va. Code § 8.01-328; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945). For similar reasons, venue is proper because both Defendants reside within the Eastern District of Virginia. *See* 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1400(a); *Spencer v. Yellowcabservices.com*, 2020 WL 13200117, at *2.

Finally, pursuant to Federal Rule of Civil Procedure 4, Virginia Code § 13.1-1018, and Virginia Code § 8.01-329, both Defendants were properly served. On December 7, 2022, Gomez properly served Midlo Floors at its principal place of business via an agent for service of

process.  (ECF No. 6, at 2.)  On February 28, 2023, Mr. Gomez properly served the Secretary of the Commonwealth, as statutory agent for CityLocal101 in accordance with Section 8.01-329 of the Code of Virginia, as amended.  (ECF No. 10-1, at 1.)  On March 7, 2023, Mr. Gomez also mailed the Summons for CityLocal101, the Complaint, and the Service of Process Affidavit to CityLocal101's principal place of business.  (ECF No. 10-1, at 3.)

**B.      Mr. Gomez's Allegations, Deemed Admitted, Establish that Midlo and CityLocal101 Infringed on Mr. Gomez's Copyright and Entitle Him to Relief**

Mr. Gomez demonstrates entitlement to relief based on the well-pleaded facts in the Complaint.  Mr. Gomez alleges that (1) he successfully registered the Work with the Register of Copyrights, (ECF Nos. 1, at 4; 1-1, at 2, 7–8); (2) he never authorized Defendants to use the Work for any purpose, (ECF No. 1, at 4); and (3) Defendants included the Work in an advertisement for Midlo on CityLocal101's website, (ECF Nos. 1, at 2, 4–5; 1-2, at 2–4).  These allegations sufficiently support Mr. Gomez's claim that Defendants infringed his copyright in violation of 17 U.S.C. § 501.[11]

The Copyright Act provides that a copyright owner has exclusive rights to its copyrighted works.  *See* 17 U.S.C. §§ 101, 106(1), (3)–(5), 501.  A copyright owner has the exclusive right to reproduce the works; distribute copies to the public by sale, rental, lease, lending, or other transfer of ownership; perform the works; or display the works publicly.  *See id.* § 106(1), (3)–

---

[11] 17 U.S.C. § 501 provides in relevant part:

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be.

17 U.S.C. § 501(a).

(5). Anyone who violates the copyright owner's exclusive rights is considered an infringer. *See id.* §§ 106, 501(a). To establish a claim of copyright infringement, a plaintiff must show (1) its ownership of a valid copyright for the allegedly infringed material and (2) "copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

A certificate of registration constitutes prima facie evidence of a valid copyright. *Universal Furniture Int'l, Inc. v. Collezione Europe USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010). And, "[w]hen such a certificate exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid." *Id.* (citation omitted).

Here, Mr. Gomez has established that he owns the valid copyright to the photograph at issue. He created the Work himself and attached the certificate of registration to his Complaint. (ECF Nos. 1, at 3; 1-1.) The certificate of registration provides that the effective date of registration for the work is July 1, 2020. (ECF No. 1-1, at 1.) Thus, Mr. Gomez has proven that he owns a valid copyright for the Work and has the right to sue for copyright infringement.

Next, Plaintiff has shown Defendants committed copyright infringement. Defendants violated Mr. Gomez's copyright by copying the Work and posting it on CityLocal101's website in an advertisement for Midlo's business (the "Advertisement"). (ECF No. 1, at 4.) Mr. Gomez discovered the Advertisement on or about December 10, 2021. (ECF No. 1, at 4.) The absence of any response from Defendants fails to meet their burden and solidifies the facts alleged. Accordingly, the Court concludes that Defendants infringed on Mr. Gomez's copyright.

### C.   Mr. Gomez's Allegations Have Established His Right to Receive Statutory Damages, Costs, Fees, and Interest as Well as Injunctive Relief

In his Motion, Mr. Gomez requests that the Court award enhanced statutory damages of "at least $27,500 under 17 U.S.C. § 504(c)(2)". (ECF No. 18, at 16.) Mr. Gomez arrives at this

amount by asking the Court to apply a multiplier of five to $5,500, which is the licensing fee Mr. Gomez represents he would have charged for the use of the work. (ECF Nos. 18, at 13, 16; 18-1, Gomez Decl. ¶ 16.) Mr. Gomez also requests: (1) full costs and reasonable attorney's fees, amounting to $13,837.50; (2) that the Court "permanently enjoin Defendants from infringing activities"; (3) prejudgment interest; and (4) such further relief as the Court deems appropriate. (ECF No. 18, at 5, 16, 18.)

For the reasons articulated below, the Court finds that this record supports the application of a multiplier of 1.5 to Mr. Gomez's $5,500 licensing fee, or $8,250.00 in statutory damages. This finding takes into account the well-pled allegations in the Complaint, the evidence shown, Defendants' willful infringement, and the need for deterrence. The Court will award statutory damages of $8,250.00, full costs amounting to $855.00, reasonable attorney's fees amounting to $12,982.50, and pre- and post-judgment interest. The Court will also permanently enjoin Defendants and their employees from further violating Mr. Gomez's copyright of the Work.

### 1. Mr. Gomez is Entitled to Statutory Damages

Under the Copyright Act, an infringer can be held liable for either actual damages and profits or statutory damages. 17 U.S.C. § 504(a); *see X-It Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 527–28 (E.D. Va. 2002) (discussing statutory damages as an alternative to actual damages and profits). In cases of willful infringement, the Court may award as much as $150,000 in statutory damages. 17 U.S.C. § 504(c)(2). The Copyright Act affords courts discretion in determining the proper amount of statutory damages. *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 508 (E.D. Va. 2009). "Because of the important deterrent purposes served by statutory damages, . . . courts have routinely awarded statutory damages in amounts that arc between two and three times license fees." *Id.* at 508–09.

When determining the proper amount of statutory damages, courts consider: "expenses saved by the defendant in avoiding a licensing agreement; profits reaped by defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement." *Id.* at 509 (citing *Cross Keys Publ'g Co., Inc. v. Wee, Inc.*, 921 F. Supp. 479, 481 (W.D. Mich. 1995) (awarding statutory damages approximately 2.3 times greater than the licensing fee due to defendant's "blatantly willful conduct" where defendant ignored plaintiff's repeated offers to license plaintiff's work and continued infringing conduct). Courts may also "consider the goal of discouraging wrongful conduct." *Id.* (citing *F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 233 (1952)); *see Spencer v. Yellowcabservices.com, LLC,* No. 1:20cv368 (AJT/TCB), 2020 WL 13200117, at *5 (E.D. Va. Nov. 19, 2020) (awarding enhanced statutory damages of $25,000 to "remediate [plaintiff's] harm and help deter future infringement").

Although not outlined in the Copyright Act, courts have defined willful copyright infringement as the defendant having knowledge, "either actual or constructive, that its actions constitute an infringement, . . . or recklessly disregard[ing] a copyright holder's rights[.]" *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) (citing *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) and *N.A.S. Import Corp. v. Chenson Enterprises*, 968 F.2d 250, 252 (2d Cir. 1992)).

### i.      Mr. Gomez Has Not Shown Entitlement to Damages in the Amount of Five Times His Licensing Fee

Here, Mr. Gomez asks the court to award damages of $27,500 after applying a multiple of five to Mr. Gomez's $5,500 licensing fee because "the Work has lost significant value [due] to [Mr. Gomez's] loss of control of the licensing and usage of the photograph and the continued dissemination resulting from Defendants' infringement." (ECF No. 18, at 13.) Mr. Gomez

13

explains in his Declaration in support of the Motion that Defendants have "impair[ed] the market value of the Work" because Defendants' competitors "will not want to obtain a license to" the Work if competitors associate it "with a competing business." (ECF No. 18-1, Gomez Decl. ¶ 17.) Mr. Gomez also contends that "potential licensees of [his] copyrighted photographs will not want to pay [his] license fees if they see other commercial enterprises taking and using [his] photographs for [their] own commercial purposes without paying any fee[.]" (ECF No. 18-1, Gomez Decl. ¶ 17.)

Plaintiff cites to no Fourth Circuit authority supporting the application of a five times multiplier to Mr. Gomez's licensing fee. Rather, Mr. Gomez cites to two out-of-circuit cases: (1) *Bruce v. Weekly World News*, 310 F.3d 25, 28–29 (1st Cir. 2002) (remanding with directions to apply a multiplier of five to plaintiff's $1,100 licensing fee to $5,500 where defendant "was unjustly enriched by virtue of the district court's fifty-percent reduction in the $2,200 licensing fees"); and (2) *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 394 (3d Cir. 2016) (affirming $1.6 million jury verdict which reflected "the lower end of" expert's proposed "multiplier of three to five times the benchmark for scarcity and 3.75 to 8.75 times for exclusivity"). (ECF No. 18, at 13.) *But see Johnson v. Donation Funnel Project, Inc.*, No. 1:22cv00230 (MR), 2023 WL 6217752, at *3 (W.D.N.C. Sept. 25, 2023) (declining to apply a scarcity multiplier to plaintiff's damages caused by copyright infringement, observing that "the only case within the Fourth Circuit that addresses such a multiplier in the context of a copyright default judgment is *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, Civil No. 18-03403 (SAG), 2021 WL 5359671 (D. Md. Nov. 17, 2021), where "the court declined to let an expert witness testify as to the scarcity of a photograph because the expert's 'subjective belief' fell short of the standard articulated in *Daubert*").

14

Mr. Gomez presents no evidence proving the extent of his lost revenue beyond representing that, per his "website's quoting feature" and obtaining a quote "for a comparable 1-year-commercial-use, full-page use of [his] image", he would have charged Defendants a licensing fee of $5,500 for the use of the Work for one year.  (ECF No. 18-1, Gomez Decl. ¶ 16.) This level of proof may meet the necessary standard, but it does so barely.

Mr. Gomez also represents that "[t]he Work has lost significant value by the widespread dissemination resulting from [Defendants'] infringement" and that "[a]fter Midlo Floors copied the Work, it made further copies and distributed the Work on the [I]nternet to promote the sale of its services."  (ECF No. 18-1, Gomez Decl. ¶¶ 12, 18; *see also* ECF No. 18, at 6 (citing to paragraphs 18 through 20 of the Complaint for the proposition that "[a]fter Defendants copied the Work, they made further copies and distributed the Work on their websites to advertise and promote Midlo's sale of goods and services").)

Neither Mr. Gomez's Complaint, nor his Declaration, nor his Declaration's Exhibits allow the Court to find that Defendants have caused "widespread dissemination" of the Work. Rather, in both the Complaint and in Mr. Gomez's Declaration, Mr. Gomez identifies only one instance, the offending Advertisement at bar, where the Defendants publicly disseminated the Work.  (ECF Nos. 1 ¶¶ 6, 18–20; 18-1, Gomez Decl. ¶ 10.)  In the context of the Internet, "[c]ourts within [the Ninth] Circuit and [its] sister Circuits have consistently held that the mere availability of a work online is insufficient to establish widespread dissemination." *Lois v. Levin*, No. 2:22cv00926 (SVW/ADS), 2022 WL 4351968, at *3 (C.D. Cal. Sept. 16, 2022) (collecting cases) (finding mere availability of plaintiff's song on multiple online streaming platforms insufficient to demonstrate access).  Here, neither the Complaint nor Mr. Gomez's

Declaration establishes or even estimates the number of people who actually viewed the Advertisement. Therefore, a five-time multiplier should not apply.

### ii.    Defendants' Infringement Was Willful

Mr. Gomez requests that the Court infer that Defendants' infringement was willful by virtue of their failure to defend this action. (ECF No. 18, at 15.) To support this request, Mr. Gomez cites only to cases that are not binding on this Court.[12] As a Western District of North Carolina Court recently observed, the support for such an inference "within [the Fourth] Circuit is very thin." *Johnson* 2023 WL 6217752, at *6 (collecting cases). For the reasons discussed below, the Court finds that Defendants' infringement was willful, but does so based on Mr. Gomez's allegations and the evidence provided.

When assessing the appropriate damages for copyright infringement after a default judgment, courts within this district typically cite to evidence in a complaint to support a finding of willful copyright infringement. *See, e.g., UMG Recordings, Inc. v. Kurbanov*, No. 1:18cv957 (CMH/TCB), 2021 WL 6492907, at *9 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, No. 1:18cv957 (CMH), 2022 WL 20417526 (E.D. Va. Feb. 10, 2022) (citing evidence in plaintiff's complaint to support a finding of willful copyright infringement, rather than inferring willfulness due to defendant's default); *Spencer v. Yellowcabservices.com*, No. 1:20cv368 (TCB), 2020 WL 13200117, at *5 (E.D. Va. Nov. 19, 2020) (same); *Malibu Media,*

---

[12] For example, Mr. Gomez cites to, *inter alia, Wilson v. Nat'l Bikers Roundup Inc.*, Civil No. 3:15-4862 (MGL/SVH), 2017 WL 9275157, at *4 (D.S.C. May 12, 2017), *report and recommendation adopted*, Civil No. 3:15-04862 (MGL/SVH), 2017 WL 2644209 (D.S.C. June 20, 2017); and (2) *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). (ECF No. 18, at 15.) In *Wilson*, a District of South Carolina Court stated that "[a] court may infer that a defendant's infringement is willful from the defendant's failure to defend." 2017 WL 9275157, at *4 (citing *Tiffany (NJ) Inc.*, 282 F. Supp. 2d at 124). Similarly, in *Tiffany (NJ) Inc.*, a Southern District of New York court deemed defendant's infringement as willful "[b]y virtue of the default." 282 F. Supp. 2d at 124.

*LLC v. Doe*, No. 1:19cv519 (TCB), 2019 WL 7476684, at *4 (E.D. Va. Dec. 9, 2019) (same); *Strike 3 Holdings, LLC v. Doe*, No. 1:21cv1140 (TCB), 2022 WL 3337797, at *5 (E.D. Va. 2022) (same). Accordingly, the Court will decline to infer willful infringement by virtue of Defendant's default alone.

By their default, Defendants admit only Mr. Gomez's well-pleaded factual allegations— they do not admit conclusions of law, which include a determination of willfulness. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)). Thus, for the Court to have a basis on which to find willfulness, Mr. Gomez bears the burden of providing either evidence of willfulness or specific factual allegations of willfulness that are admitted by default.

Here, Mr. Gomez provides the following allegations and evidence to support a finding of willfulness. First, he alleges that "Defendants copied [the] copyrighted Work from the [I]nternet." (ECF No. 1, at 2.) In his Declaration, Mr. Gomez explains that he "post[s] [his] works onto [his] website https://www.gareygomez.com/." (ECF No. 18-1, Gomez Decl. ¶ 8.) As Exhibit 2 to his Declaration, he attaches a screenshot of his website containing the Work. (ECF No. 18-1, at 14.) In this screenshot, the Work contains no watermark or other indication explicitly indicating that the Work belongs to Mr. Gomez. However, by virtue of its placement on Mr. Gomez's website, which features Mr. Gomez's photography and advertises his photography business,[13] it is reasonable to infer that Mr. Gomez created and owns the Work. Indeed, he provides the Copyright that he owns. (ECF No. 1-1.)

---

[13] Mr. Gomez's professional website can be publicly accessed at https://www.gareygomez.com/.

As described above, Mr. Gomez alleges that on or about December 10, 2021, he discovered the Work on CityLocal101's website in an advertisement for Midlo's business. (ECF Nos. 1, at 4; 18-1, Gomez Decl. ¶ 13.) Mr. Gomez also attests that on January 12 and 31, 2022, he notified Midlo of the allegations set forth in his Complaint. (ECF Nos. 1, at 5; 18-1, Gomez Decl. ¶ 13.) Mr. Gomez further states that in March of 2022, he notified CityLocal101 of the allegations set forth in his Complaint. (ECF Nos. 1, at 5; 18-1, Gomez Decl. ¶ 13.)

However, Mr. Gomez does not aver that the Defendants engaged in a lengthy use of the Work after notice of infringement. Mr. Gomez states that, not knowing when the infringement began, he can attest only that his "Work was used by Defendants for at least a period of four months" requiring "at least a 1-year license" at a cost of $5,500. (ECF No. 18-1, Gomez Decl. ¶ 16.) Mr. Gomez cites persistent disregard of the Complaint and, to a degree, his notices. (ECF No. 18, at 7 (citing ECF No. 18-1, Gomez Decl.), 11.) Mr. Gomez asserts that by the time he filed the Complaint on November 30, 2022, Defendants had not responded to the notices. (ECF No. 1, at 5.) Moreover, as of June 29, 2023, Defendants still had not responded to Mr. Gomez's notices. (ECF No. 18-1, Gomez Decl. ¶ 15.)

Based on Mr. Gomez's allegations and the evidence provided, the Court finds that Defendants infringement of Mr. Gomez's copyright was willful because they had knowledge, "either actual or constructive, that [their] actions constitute[d] an infringement" and continued the infringement for at least four months. *See Lyons P'ship, L.P.*, 243 F.3d at 799 (internal quotation marks omitted). Accordingly, the Court concludes that Mr. Gomez has established willful conduct although, as with his licensing fee, he has done so just barely. *Compare Banilla Games, Inc. v. Russell Charles Hines*, No. 2:22cv212 (RJK), 2022 WL 17085953, at *5 (E.D. Va. Oct. 31, 2022), *report and recommendation adopted sub nom. Banilla Games, Inc. v. Hines*,

No. 2:22cv212 (RBS), 2022 WL 17084378, at *5 (E.D. Va. Nov. 18, 2022) (plaintiff failed to

establish willful infringement where plaintiffs did "not allege[] any actions taken to notify

[defendant] of the copyright infringement nor facts that [defendant] actually knew of

the copyright") with *EMI Apr. Music*, 618 F. Supp. 2d at 509 (noting willful violation when

defendant continued to infringe copyright even after notice).

Given "the important deterrent purposes served by statutory damages", this Court will

award statutory damages at the low end of the routine award of "statutory damages in amounts

that arc between two and three times license fees." *See EMI Apr. Music, Inc.*, 618 F. Supp. 2d at

508–09 (collecting cases). The Court will award statutory damages in the amount of $8,250.00,

or 1.5 times the licensing fee at issue.

## 2. Injunctive Relief

The Copyright Act provides that a court may grant injunctive relief to prevent the

infringement of copyrights. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil

action arising under this title may . . . grant temporary and final injunctions on such terms as it

may deem reasonable to prevent or restrain infringement of a copyright."). To obtain a

permanent injunction, plaintiffs must show:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to
compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant,
a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*Strike 3 Holdings*, 2022 WL 3337797, at *6 (quoting *Christopher Phelps & Assocs., LLC v.

Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (further citations omitted)). "Irreparable injury

often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Christopher Phelps & Assocs., LLC*, 492 F.3d at 544.

Mr. Gomez has established that Defendants violated his copyright by posting the Work online, causing him irreparable harm, and any continuing infringing conduct would continue to cause such harm. (ECF Nos. 1, at 4; 18-1, Gomez Decl. Ex. 3 at 16–18); *see Strike 3 Holdings*, 2022 WL 3337797, at *6 (finding irreparable harm where defendant "downloaded and distributed Plaintiff's works globally [online]", and where it was not possible to trace the extent and magnitude of the damage where defendant "continue[d] . . . to distribute these works" online).

Mr. Gomez further claims that he has no remedy at law that could adequately compensate him. (ECF No. 18, at 17.)  Courts have held that when a plaintiff has effected "personal service on [Defendants], and [they] fail[] to respond in any way[,] . . . [t]his lack of an appropriate response demonstrates that there is a near certainty of continuing copyright infringement[.]" *Malibu Media, LLC*, 2019 WL 7476684, at *6.  Defendants' lack of response to this lawsuit, in addition to their failure to respond to Mr. Gomez's pre-litigation correspondence, "shows that [Defendants are] unlikely to cooperate with [Mr. Gomez's] requests absent the Court's issuance of injunctive relief." *See id.*

Courts finding a lack of adequate remedy, however, have generally evaluated a claim of a repeat or a "habitual infringer." *Id.* at *2; *see also EMI Apr. Music, Inc.*, 618 F. Supp. 2d at 509 (observing that defendant ignored offers of a license to play the music and "continued to play copyrighted music without proper authorization").  Reasonably read, Mr. Gomez attests only to continued infringement for four months through at least March 2022. (*See* ECF No. 18-1, Gomez Decl. ¶ 16.)  He fails to allege that the infringement continued even through November

30, 2022, when he filed his Complaint. (ECF No. 1.) Nonetheless, given Defendants' lack of

any response to Plaintiff's notices of infringement, the Court finds that Mr. Gomez lacks an

adequate remedy at law, especially with respect to future reuse of the Work.

The balance of hardships weighs in Mr. Gomez's favor. The only hardship Defendants

"would suffer from a permanent injunction would be the requirement to follow clearly

established copyright law." *See Malibu Media, LLC*, 2019 WL 7476684, at *6. In contrast, in

the absence of injunctive relief, Mr. Gomez would face lost profits and continued infringement

of his rights under the Copyright Act.

Finally, the public interest would not be disserved by issuing a permanent injunction.

"[T]he public interest reflected in the Constitutional protection of copyright, and the

congressional enactment of the Copyright Act, is enhanced by issuance of a permanent

injunction where copyright infringement has taken place." *EMI Apr. Music*, 618 F. Supp. 2d

at 511.

Accordingly, the Court finds appropriate the issuing of a permanent injunction against

Defendants and their employees against any use of the Work because it is the best means to

prevent future harm to Mr. Gomez. Specifically, the Court will enjoin Defendants and their

employees from further violating Mr. Gomez's copyright of the Work.

### 3.    Costs and Attorney's Fees

Under the Copyright Act, a "court in its discretion may allow the recovery of full costs by

or against any party," and a "court may also award a reasonable attorney's fee to the prevailing

party as part of the costs." 17 U.S.C. § 505. Courts are not required to award attorney's fees and

costs to the prevailing party as a matter of course. Rather, it is wholly in the Court's discretion

whether to award these damages. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). "The

21

Fourth Circuit and other courts in the Eastern District of Virginia have generally awarded reasonable attorney's fees for copyright infringement cases." *EMI Apr. Music, Inc.*, 618 F. Supp. 2d at 512 (citing to *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994) and *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1003 (E.D. Va. 1985)); *see also Strike 3 Holdings, LLC. v. Doe*, No. 1:21cv1310 (RDA/TCB), 2022 WL 3337797, at *7 (E.D. Va. Aug. 4, 2022) (observing that "[c]ourts routinely award costs to a successful plaintiff on default judgment, especially when the defendant committed willful copyright infringement").

To "determine whether an award of attorney's fees should be made to a party under 17 U.S.C. § 505", courts consider the following factors: (1) "the motivation of the parties"; (2) "the objective reasonableness of the legal and factual positions advanced"; (3) "the need in particular circumstances to advance considerations of compensation and deterrence"; and (4) "any other relevant factor presented." *EMI Apr. Music*, 618 F. Supp. 2d at 512 (citing *Diamond Star Bldg. Corp.*, 30 F.3d at 505).

The Court concludes that costs and attorney's fees should be awarded in this case. First, Mr. Gomez's motivation in bringing this suit was to vindicate his rights under the Copyright Act. Second, Mr. Gomez has placed before the Court objectively reasonable legal and factual positions, especially given the finding that Mr. Gomez is entitled to relief under the Copyright Act. Third, the Court finds that the need for deterrence is strong where Mr. Gomez attempted multiple times to place Defendants on notice that they had infringed his copyright, and Defendants failed to respond to Mr. Gomez's notices and to the filing of this lawsuit. Fourth, no other relevant factors impact the Court's analysis. *See EMI Apr. Music*, 618 F. Supp. 2d at 512.

Mr. Gomez requests that the Court award $855 in costs ($453 from SRIPLAW and $402 from Schleifman) and $12,982.50 in attorney's fees ($12,422.50 from SRIPLAW and $560.00

from Schleifman). (ECF No. 18, at 16.) To establish the amount and reasonableness of this request, Mr. Gomez submits the Declaration of Eliezer Lekht (the "Lekht Declaration"). (ECF No. 18-2, Lekht Decl.) The Lekht Declaration provides an hourly and itemized breakdown of the attorney's fees and costs requested. (ECF No. 18-2, at 6–16.)

Upon review, the Court finds that the itemized request for attorney's fees and costs is reasonable.[14] The Court will award Mr. Gomez $12,422.50 in attorney's fees from SRIPLAW and $560.00 from Schleifman, for a total amount of $12,982.50 in attorney's fees. The Court will award $453 in costs from SRIPLAW and $402 from Schleifman, for a total amount of $855 in costs.

### 4. Prejudgment and Post-judgment Interest

Mr. Gomez requests "prejudgment interest" and "any other relief" that the Court "deem[s] just and proper." (ECF No. 18, at 12, 18.) Although the Copyright Act does not explicitly reference the availability of prejudgment interest, courts have previously found that "prejudgment interest is available in copyright infringement claims." *Banilla Games*, 2022 WL 17085953, at *6 (emphasis removed) (citing *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 664 (E.D. Va. 2011), *aff'd*, 498 F. App'x 341 (4th Cir. 2012) (further citations omitted)). When considering whether to award prejudgment interest, courts consider "fairness and Congressional intent." *Tattoo Art, Inc.*, 794 F. Supp. 2d at 664; *see also Banilla Games, Inc.*,

---

[14] The record does not reflect why Mr. Schliefman, a Virginia attorney, warrants an hourly rate of $560, or $110 more per hour than Mr. Lekht, his New York counterpart. This, of course, could result from many factors, including years of experience and expertise. Although Mr. Lekht did, Mr. Schliefman says nothing about the reasonableness of his hourly rate. Mr. Lekht's ambiguous reference to "reasonable rates in the (unspecified) local area" may or may not refer to Mr. Schliefman's hourly rate. (ECF No. 18-2, Lekht Decl. ¶ 14.) But the Court sees that Mr. Schliefman reports just 1.4 hours of time, (ECF No. 18-1, Gomez Decl. Ex. 5), and Plaintiff seeks the amount equivalent to just one hour of his time. As such, the request is more than reasonable.

2022 WL 17085953, at *6 (same). "In the absence of a request by a plaintiff for a particular interest rate", courts in this district have "applied the prejudgment interest rate in accordance with Virginia's standard judgment interest rate in VA. CODE § 6.2-302." *Gmbh v. Ilnitskiy*, No. 1:17cv415 (TCB), 2018 WL 1882823, at *8 (E.D. Va. Jan. 25, 2018), *report and recommendation adopted sub nom. Montblanc-Simplo GmbH v. Ilnitsky*, No. 1:17cv415 (LMB/TCB), 2018 WL 844401 (E.D. Va. Feb. 13, 2018) (citing *Tattoo Art, Inc.*, 794 F. Supp. 2d at 665) (concluding, where plaintiff did not request a particular interest rate, "that Virginia's standard judgment interest rate in VA. CODE § 6.2-302 [was] appropriate . . . for prejudgment interest" for copyright infringement, and that "it should be calculated from . . . the date that [d]efendant first infringed"); *Tattoo Art, Inc.*, 794 F. Supp. 2d at 663–64 (same); *Banilla Games*, 2022 WL 17085953, at *6 (same). Currently, prejudgment interest is at an annual rate of six percent in the Commonwealth of Virginia. Va. Code. Ann. § 6.2-302(B) (2010).

"A court may also allow post-judgment interest 'on any money judgment in a civil case recovered in a district court.'" *Banilla Games, Inc.*, 2022 WL 17085953, at *6 (citing 28 U.S.C. § 1961(a)). Post-judgment interest is "calculated in accordance with 28 U.S.C. § 1961." *Id.*

The Court finds that awarding prejudgment and post-judgment interest is proper here. Defendants violated Mr. Gomez's copyright to their benefit and failed to appear in this lawsuit. Thus, in light of considerations of fairness and Congressional intent, "awarding prejudgment interest would not be inequitable and would aid in both deterring copyright infringement and making [Mr. Gomez] whole." *See Banilla Games, Inc.*, 2022 WL 17085953, at *6 (citing *Tattoo Art, Inc.*, 794 F. Supp. 2d at 664–65). The prejudgment interest should be calculated at an annual rate of six percent from December 10, 2021, the date Mr. Gomez discovered Defendants' infringement, (ECF No. 1 ¶ 19), until the date of this Memorandum Opinion and related Final

Order.  Additionally, "awarding post-judgment interest to [Mr. Gomez] is appropriate in this case

to ensure that [Mr. Gomez] receive[s] the proper value of the damages awarded against

[Defendants]."  *See Banilla Games, Inc.*, 2022 WL 17085953, at *6.  Post-judgment interest is to

be calculated in accordance with 28 U.S.C. § 1961.  *See id.*

### IV.  Conclusion

For the foregoing reasons, the Court will grant in part the Motion.  (ECF No. 18.)  First,

the Court will order that default judgment be entered against Defendants.  Second, Defendants

and their employees will be permanently enjoined from further violating Mr. Gomez's copyright

of the Work.  Third, Defendants will be ordered to pay $8,250 in statutory damages, $855 in

costs, and $12,982.50 in attorney's fees.  Finally, Defendants will be ordered to pay prejudgment

interest at an annual rate of six percent from December 10, 2021 until the date of this

Memorandum Opinion and related Final Order, as well as post-judgment interest to be calculated

in accordance with 28 U.S.C. § 1961, accruing from the date of this Memorandum Opinion and

related Final Order.

An appropriate Order shall issue.

Date: 2/12/24
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge